UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:25-cr-00510-MTS |
| MIGUEL RUIG-NUNEZ, | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Government's Motion for Revocation of Release Order pursuant to 18 U.S.C. § 3145(a), Doc. [31]. Upon review of the complete record, the Court will grant the Government's Motion for Revocation of the Release Order, Doc. [31], and order Defendant be detained pending trial.

**I.  Findings of Fact**

The defendant Miguel Ruig-Nunez is charged in the above-entitled cause with one count of Conspiracy to Commit Financial Institution Theft, in violation of 18 U.S.C. § 2113(b), 18 U.S.C. § 371, based upon his participation in an ATM "jackpotting" ring through which he and his co-conspirators stole close to $1,000,000 from financial institutions in the St. Louis, Missouri area. Defendant had his initial appearance in the Middle District of Florida, Orlando Division on October 28, 2025, pursuant to an arrest warrant issued by this Court. *See* 6:25-mj-02221-DCI. The Government made an oral motion for detention on the basis that Defendant posed a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). United States Magistrate Judge Daniel C. Irick asked the

Government to proffer the basis for that belief to determine whether a sufficient basis existed to even hold a detention hearing under § 3142(f)(2)(A). Based upon the information proffered to Judge Irick, he issued an order finding that the Government had not met its burden to establish that the court should hold a detention hearing based on a serious risk of flight or that Defendant posed a danger to the community. *See* Doc. [4] and Doc. [30] at 17 in 6:25-mj-02221-DCI. Subsequently, Judge Irick issued an order setting conditions of release and ordered the United States Marshals Service to keep the Defendant in custody until notified that Defendant had posted bond and/or complied with all other conditions for release. *See* Doc. [17] in 6:25-mj-02221-DCI. Judge Irick also granted the Government's request for a stay of the release order setting conditions of release, allowing the Government to file a request for a stay of the magistrate judge's release order and an appeal with this Court. *See* Doc. [4] in 6:25-mj-02221-DCI.

## II. Legal Standard

"Pretrial detention is an issue that should be resolved at the outset of the case." *United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023). The Court must first consider, as a threshold matter, if the government has shown that the case involves one of the circumstances defined § 3142(f)(1) or (2). *Id*. Here, the Government's motion for pretrial detention was based upon a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). Once that threshold matter has been established, a court may order a defendant detained before trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions. . . will reasonably assure the defendant's appearance." *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (first quoting *United States v. Orta*, 760 F.2d 887, 891 n.20 (8th Cir. 1985) (en

2

banc) (emphasis in original)), then citing 18 U.S.C. § 3142(c), (e)-(f)). "'[E]ither danger to the community or risk of flight is sufficient to authorize detention.'" *United States v. Cantu*, 935 F.2d 950, 952 (8th Cir. 1991) (quoting *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

"[W]hile the § 3142(e)(1) and (g) inquiry is not identical to the § 3142(f)(2)(A) inquiry, many of the same considerations apply." *Cook*, 87 F.4th at 925. The § 3142(g) factors include: 1) the nature and circumstances of the offense charged, 2) the weight of the evidence against the person, 3) the history and characteristics of the person, including- -

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

### III.    Discussion and Statement of Reasons for Detention

The Court makes its written findings of fact and statement of the reasons for detention as contemplated in 18 U.S.C. § 3142(i)(1). As stated previously, a magistrate judge in Florida issued a pretrial release order and then stayed it so this Court could hear the Government's motion for revocation of the pretrial release order. Under 18 U.S.C. § 3145(a)(1), the Government may file "a motion for revocation of the [release] order or amendment of the conditions of release." *United States v. Maull*, 773 F.2d 1479, 1481–82 (8th Cir. 1985) (en banc). A district judge reviewing a magistrate judge's pretrial order of release or detention must conduct a de novo review of that order.

3

*Id.* "Reviewing without deference does not require the district court to start over in every case and proceed as if the magistrate's decision and findings do not exist." *Cook*, 87 F.4th at 924 (cleaned up); *see* also *United States v. Stephenson*, 2025 WL 999557, *6 (N.D. Iowa Apr. 3, 2025) (discussing standard of review of detention decisions).

The Court will first consider the nature and circumstances of the offense charged and the weight of the evidence against Defendant. Defendant is charged with Conspiracy to Commit Financial Institution Theft based upon his participation in an ATM "jackpotting" ring through which he and his co-conspirators stole well over $900,000 from financial institutions in St. Louis, Missouri and surrounding areas. Specifically, the Indictment alleges that a co-conspirator was a technician for a company that provided maintenance services for ATMs. That co-conspirator used his position to install malware on the hard drives of ATMs at various financial institutions. This enabled the other co-conspirators to take control of the ATMs and force the ATMs to dispense substantial amounts of money without conducting legitimate transactions. Further, Defendant and the other co-conspirators traveled from various locations in the United States to Missouri for the sole purpose of stealing large sums of money from these financial institutions. In fact, between December 6, 2024, and December 12, 2024, another co-conspirator rented numerous Airbnb properties to provide lodging for the conspirators and Defendant rented a vehicle to transport himself and other co-conspirators around the St. Louis area to carry out their criminal endeavors. The weight of the evidence, the brazen nature and circumstances of the offense, and Defendant's role in the conspiracy are factors that weigh against Defendant's release.

Next, the Court will consider the history and characteristics of Defendant. Based upon interviews and pretrial service reports provided by both the Middle District of Florida, Doc. [103-

1], and the Eastern District of Missouri, Doc. [103][1], Defendant is in his mid-forties and a citizen of Venezuela. Although unclear, it appears Defendant previously held some form of temporary protected status, both ICE and HSI reported that Defendant is currently in the country illegally, has an ICE detainer lodged against him, and "is removable under U.S. immigration law." *See* Docs. [103], [103-1], and Doc. [35-1].[2] The Florida Report details that: 1) ICE records show Defendant was paroled into the United States in 2016 and assigned an alien registration number; 2) He was granted an employment authorization document and granted a temporary protected status that is no longer recognized; 3) Defendant has a valid driver's license and social security number; 4) Defendant claimed he does not possess a United States passport, and that his Venezuelan passport and green card were stolen. Doc. [103-1] at 1. The Missouri Report indicates that: 1) Defendant made no mention of receiving employment authorization documents or temporary protected status, but reported he is in the "process of receiving political asylum in the United States;" 2) Although Defendant claimed his passport and green card were stolen, his sister advised that she is in possession of Defendant's Venezuelan passport. Doc. [103] at 2.

The Missouri Report noted that although the information in the Florida Report was "mostly consistent," the Missouri Report contains an entire page of discrepancies between what Defendant told pretrial services in Florida and what he told pretrial services in Missouri, including the address and city in Florida that Defendant intends to return to if released and with whom he intends to reside. The Florida report lists an address in St. Cloud, Florida where Defendant claims he rented a room from a friend for the past 10 months. However, he told Missouri pretrial services that he had

---

[1] Information was provided to the pretrial offices by the United States Immigration and Customs Enforcement ("ICE") and Homeland Security Investigations Agency ("HIS"). The pretrial services report will be referred to as the "Florida Report" and the "Missouri Report."
[2] Doc. [35-1], is Defendant's immigration detainer.

5

lived at that address for two years. Defendant also indicated in the Florida report that he wanted to return to that address if released but told Missouri pretrial services he wanted to live with his sister, Claudia Ruig in Kissimmee, Florida. At the hearing on the Motion, however, Defendant's counsel explained that if Defendant were released, he wanted to stay at yet another sister's home in Orlando, Florida. These factors weigh against Defendant's release. Defendant is in the United States illegally and the information he provided to the pretrial services offices in Missouri and Florida contain multiple discrepancies that are deceptive in nature.

As to family ties, employment, financial resources, and length of residency in the community, it appears Defendant has relatives that live in Orlando, Florida, including his mother, another sibling, two kids, and his wife. Defendant claims to have lived in Florida for the past nine years. He also claims he has worked at Mechanical One for the past two years, and earns $4,500 per month.[3] On the other hand, the only ties Defendant has to the Eastern District of Missouri are the crimes he committed when he and his co-conspirators traveled from all over the country to Missouri for the sole purpose of stealing substantial sums of money from financial institutions.[4] Although it does not appear that Defendant has any prior convictions, if convicted, he faces his first criminal conviction subject to up to five years in federal prison followed by removal proceedings. These factors weight against Defendant's release.

Given the nature and circumstances of Defendant's criminal endeavors, lack of community ties to the Eastern District of Missouri, the multiple discrepancies in information Defendant

---

[3] In the Missouri Report he claims to earn $5,000 per month. Other financial discrepancies provided by Defendant are noted in the Missouri report, as well as discrepancies concerning his medical conditions and medication, and his alcohol consumption.

[4] The fact that Defendant is in the United States illegally, was less than forthcoming and deceptive as to information he provided to the pretrial service offices in both Florida and Missouri, and that he was involved in a nationwide conspiracy to travel to Missouri and steal well over $900,000 in less than a week speaks to the nature and seriousness of the danger to the community that would be posed by the defendant's release.

provided to the Florida and Missouri pretrial services, and the implications of Defendant being faced with his first federal felony conviction and potential to serve up to a five-year federal prison sentence followed by removal proceedings, demonstrate that Defendant poses a serious risk of flight. It further shows that no condition or set of conditions will reasonably assure the appearance of Defendant, given his strong incentive to flee based upon the factors previously discussed.[5]

### IV.     Conclusion

Based upon a de novo review of the evidentiary record and arguments of counsel, the Court finds that the Government has shown by a preponderance of the evidence that Defendant presents a serious risk of flight if released, 18 U.S.C. § 3142(f)(2)(A), and that no condition or set of conditions will reasonably assure the appearance of Defendant. 18 U.S.C. § 3142(e)(1). The Court therefore concludes detention of the Defendant is appropriate pending trial.

Accordingly,

**IT IS HEREBY ORDERED** that the Government's Motion for Revocation of Release Order, Doc. [31], is **GRANTED**.

**IT IS FURTHER ORDERED** that the Government's motion for pretrial detention, pursuant to 18 U.S.C. § 3142(f)(2)(A), is **GRANTED**.

Dated this 16th day of December, 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[5] It must be noted that this Court had much more information available to it concerning Defendant's history, characteristics, and circumstances than the information available to Judge Irick at the time of the initial hearing in Florida.

**Directions Regarding Detention**

The Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody. The Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.